## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01607-CNS-STV

ESTATE OF ABBY ANGELO, et al.,

     Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY, et al.

     Defendants.

---

### JEFFERSON COUNTY DEFENDANTS' MOTION TO DISMISS

---

Pursuant to FED. R. CIV. P. 12(b)(6),[1] the Board of County Commissioners of Jefferson County and Jefferson County Sheriff Reggie Marinelli (the "Board" and "Sheriff," respectively; collectively, the "JeffCo Defendants") move to be dismissed from this action.

### BACKGROUND

Late in the evening on June 19, 2021, Abby Angelo was arrested on a probation revocation warrant and booked into the Jefferson County Jail (the "Jail") in the Sheriff's legal and physical custody in Jefferson County Case 2018CR1507. (*See* Complaint, ECF 1, ¶ 40.) During booking, Ms. Angelo was evaluated by medical employees of Defendant Wellpath, LLC ("Wellpath"), the Sheriff's Jail medical services contractor. (*Id.*, ¶¶ 43-46.)[2] Between June 20 and 26, Ms. Angelo,

---

[1] Pursuant to CIV. PRACT. STAND. 7.1B(b), the parties conferred extensively to attempt to resolve these issues but were unable to reach a resolution, including through amendment of the Complaint.

[2] In conferring in this matter, undersigned counsel provided Plaintiffs' counsel with the contract signed by the Sheriff and Wellpath, LLC, for the provision of medical services in the Jail. Undersigned counsel represents as an officer of the court that the Board does not set Jail policy.

who was withdrawing from heroin and had come in reporting a fever, responded to deputies' inquiries about her health by stating that she was tired or did not feel good. (ECF 1, ¶¶ 46, 59, 63-64.) Jail medical staff saw Ms. Angelo at least daily between June 25 and June 28. (*Id.*, ¶¶ 67-68, 72, 85, 89, 95-96, 108, 110, 113-15, 135-36, 138, 140-45, 152.) During those visits, Ms. Angelo exhibited shortness of breath, as well as intermittent low oxygen saturation. (*Id.*, ¶¶ 67-68, 72, 85, 89, 95-96, 108, 110, 113-15, 135-36, 138, 140-45, 152.) At 4:41 p.m. on June 28, 2021, Ms. Angelo was pronounced dead (*Id.*, ¶ 173.) Her cause of death was tricuspid valve endocarditis ("TVE"), an infection of the heart. (*Id.*, ¶¶ 175-76.)

On June 23, 2023, Plaintiffs – Ms. Angelo's estate (the "Estate") and her minor child, K.L., both by and through Kristie Angelo, Ms. Angelo's mother and the Estate's personal representative (collectively, "Plaintiffs") – filed this action, alleging the following claims: (1) a Fourteenth Amendment claim by based on failure to provide medical care against Wellpath employees working in the Jail; (2) a Fourteenth Amendment claim based on failure to provide medical care against Wellpath and the JeffCo Defendants; (3) a Fourteenth Amendment due process claim against all Defendants; (4) a state law medical negligence claim against all Defendants; (5) a state law negligent training and supervision claim against all Defendants; (6) a state law wrongful death claim against all Defendants; and (7) a state law survival claim against all Defendants. This Motion only addresses the Estate's Fourteenth Amendment claims (Claims Two and Three) and the state law claims (Claims Four through Seven) against the JeffCo Defendants and requests that the Court dismiss them from this action.

Even accepting Plaintiffs' allegations in the light most favorable to them, the Court should dismiss the Board from the action because it is not the proper party for claims involving the county

jail, the running, supervision, and administration of which resides wholly with the separately elected county sheriff. Additionally, the Estate's deliberate indifference claims against the Sheriff fail as a matter of law because the Estate has failed to plausibly allege (1) a constitutional violation by any individual; (2) that any Sheriff policy or custom was the moving force behind such constitutional violations. The Court should likewise reject Plaintiffs' argument that the non-delegable duty doctrine can act as a substitute for a governmental entity's policy or custom.

Regarding Plaintiffs' state law claims, the Colorado Governmental Immunity Act, codified at Colo. Rev. Stat. §§ 24-10-101 to -120 (the "CGIA"), bars those claims as against the JeffCo Defendants because Ms. Angelo was a convicted inmate in the case in which she was held at the time of her death. *See* Colo. Rev. Stat. § 24-10-106(1.5). And, even if the Court concludes that Ms. Angelo was not convicted during her incarceration on a probation revocation complaint, the applicable statute of limitations bars these claims against the Sheriff as untimely. Accordingly, the JeffCo Defendants respectfully request to be dismissed from this action.

## STANDARD OF REVIEW

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citation omitted). Nor, in this context, does "[p]lausible" mean "likely to be true;" rather, plausibility "must refer to the scope of the allegations in the

complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ARGUMENT

### I.     The Board is not a proper party for Plaintiffs' claims.

The Court should reject any attempt to secure relief against the Board because it is not the correct entity for claims arising from an in-custody jail death. The Colorado Constitution explicitly establishes that the county sheriff is a separately elected county officer with separate and distinct powers from the county commissioners who make up the Board. *See* COLO. CONST., Art. 14, § 8, *and see* COLO. REV. STAT. §§ 30-10-501 to -527 (statutory powers of county sheriff). Notwithstanding COLO. REV. STAT. § 30-11-105, a sheriff may be – and frequently is – sued independently from the board in the sheriff's county, *see* COLO. REV. STAT. §§ 30-10-519 ("Service on sheriff, how made" provides that "Every paper required by law to be served on the sheriff may be served on him in person or left at his office during business hours."), 30-10-522 ("Actions against sheriff – sureties liable – when" discusses "an action brought against a sheriff for an action done by virtue of the sheriff's office").

Critically, given these claims arise from Ms. Angelo's in-custody death, the Sheriff, not the Board, is the custodian of the county jail and responsible for the individuals incarcerated therein. COLO. REV. STAT. §§ 30-10-511 ("Sheriff custodian of jail" provides that "the sheriff shall

have charge and custody of the jails of the county, and of the prisoners in the jails, and shall supervise them himself or herself or through a deputy or jailer"); 17-26-102 ("Keeper of jail – expenses" provides, "The sheriff of the county, in person or by deputy appointed for that purpose, shall be the keeper of the county jail. He shall be responsible for the manner in which the same is kept. He shall see that the same is kept clean, safe, and wholesome."); *Est. of Burgaz by & through Zommer v. Bd. of Cty. Comm'rs for Jefferson Cty.*, Civ. Act. No. 1:19-cv-01383-SKC, 2021 WL 168441, at *3 (D. Colo. 2021), *aff'd*, 30 F.4th 1181 (10th Cir. 2022) (quoting *Est. of Blodgett v. Correct Care Solutions, LLC*, Civ. No. 17-cv-2690-WLM-NRN, 2018 WL 6528109, at *8 (D. Colo. Dec. 12, 2018),  in holding "[u]nder Colorado law, a board of county commissioners and a sheriff in the same county are *distinct public entities* . . . a board of county commissioners has no control over the sheriff's employees and is not liable for negligent acts of the sheriff's employees") (emphasis added); *Frazier v. Jordan*, No. 06-1333, 2007 WL 60883, at *6 (10th Cir. Jan. 10, 2007) ("Colorado state law does not hold the [county board] responsible for the acts of the sheriff or staff of a detention center in its county.") (citations omitted). Simply put, the Board is not authorized to and does not exercise control over the Jail – a prerequisite for Plaintiffs to recover on any theory of liability asserted in this case. Rather, Colorado law tasks the Sheriff with ensuring that inmates receive appropriate medical care, which she does via her contract with Wellpath and its staff. Because the Board is not the correct entity for Plaintiffs' claims related to Ms. Angelo's in-custody death, the Court should dismiss it from this action.[3]

---

[3] While undersigned counsel makes all subsequent arguments on behalf of the Sheriff, those arguments apply with equal force to the Board should the Court decline to dismiss it.

**II.     The Estate has not plausibly alleged that a policy or custom of the Sheriff was the moving force behind any alleged constitutional violation.**

Because the Estate's policy or custom allegations fail to establish either an underlying constitutional violation or that any Sheriff policy or custom was moving force behind such violation, the Court should dismiss the constitutional claims against the Sheriff.

As a preliminary matter, while the JeffCo Defendants do not dispute that TVE is a serious medical condition, they challenge whether the Complaint establishes the subjective component of its deliberate indifference claim against the individual Wellpath defendants. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. Jan. 20, 2023) ("For medical professionals, exercising medical judgment and not ordering diagnostic testing such as an X-ray represents at most medical malpractice. A claim that a course of treatment was inadequate after the exercise of medical judgment, absent an extraordinary degree of neglect, also does not rise to disregard of serious medical need.") (citations omitted). And, while "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability. . .  a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id.* at 1139 (citations omitted, emphasis original). Here, the Complaint alleges, at most, medical negligence by individual Wellpath defendants. Without more – an underlying constitutional violation – the Estate's *Monell* claims fail. *Accord Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) ("We will not hold a municipality liable for constitutional violations when there was no underlying constitutional violation by any of its officers.") (citations, quotations omitted).

However, even assuming the individual Wellpath Defendants' conduct rose to the level of deliberate indifference, such a showing is still insufficient to impose liability on the Sheriff.

Government entities can be sued only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Id.* at 694. A colorable municipal liability claim requires that a plaintiff (1) "identify a government's policy or custom" and (2) "show 'that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.'" *Cacioppo v. Town of Vail*, 528 F. App'x. 929, 931 (10th Cir. 2013) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)).

A plaintiff may show the existence of a policy or custom by showing the existence of:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval;[4] or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

---

[4] The Estate's ratification theory, to the extent that it asserts one, consists of a single conclusory allegation that the JeffCo Defendants "ratified the constitutional violation by the Individual Defendants by failing to administer any discipline." (ECF 1, ¶ 233.) Failure to discipline is not sufficient to establish a *Monell* claim based on ratification. *See, e.g. Erickson v. City of Lakewood*, 489 F. Supp. 1192, 1207 (D. Colo. 2020) (citing cases, including *Jack v. Cty. of Stanislaus*, 2017 WL 4123930, *7 (E.D. Cal. Sept. 15, 2017) ("Ratification is more than acquiescence, and a mere failure to discipline does not amount to ratification.")). As a result, the Court must summarily dismiss the Estate's policy or custom claim based on ratification.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation, alteration omitted). Moreover, to succeed, a plaintiff must identify a particular municipal liability theory. *Cacioppo*, 528 F. App'x at 934 (declining to recognize "amorphous hybrid theory" of municipal liability). Here, the Estate appears to ground its *Monell* claim on allegations of unconstitutional policies and practices and constitutionally deficient training and supervision. (*See* ECF 1, ¶¶ 192, 196.)

To raise a *Monell* claim based on the existence of an official policy, "a plaintiff should [identify and] set out the text of that policy." *Leonhard v. Correct Care Sols., LLC*, No. 19-cv-00600-PAB-STV, 2020 WL 1694377, at *8 (D. Colo. Apr. 7, 2020) (citing *Sandberg v. Englewood*, 727 F. App'x 950, 964 (10th Cir. 2018)). Under such a theory, municipal deliberate indifference requires a plaintiff to establish: (1) an official policy or custom, (2) causation, and (3) state of mind. *Schneider*, 717 F.3d at 769 (citation omitted).

Establishing municipal deliberate indifference based on a failure to train theory is even more demanding; as the Supreme Court has observed, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted); *Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] policy of inadequate training is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*.") (citations, quotations omitted); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989) (observing that a less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities"). To establish a failure to train claim, the Estate must show: (1) the training was inadequate; (2) the Sheriff was deliberately indifferent in adopting her training program; and (3) inadequate training directly caused the constitutional deprivations in question.

*See Montoya v. Newman*, 115 F. Supp. 3d 1263, 1283 (D. Colo. 2015) (citations omitted). It is not enough to show "merely that additional training would have been helpful in making difficult decisions" or "that an injury or accident could have been avoided if an employee had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" to establish a failure-to-train claim. *Connick*, 536 U.S. at 68 (citing *Canton*, 489 U.S. at 391). Rather, because an individual's "shortcomings may have resulted from factors other than a faulty training program," "the focus must be on adequacy of the training program in relation to the tasks the particular [individual] must perform." *Erickson*, 489 F. Supp. 3d at 1208 (citing *Canton*, 489 U.S. at 390-91).

Here, the Estate concludes – but does not plausibly plead – that the Sheriff's policies, practices, and failure to train resulted in Ms. Angelo's death. The Court should reject these conclusory legal allegations as substitutes for plausible factual allegations. *See Iqbal*, 556 U.S. at 678 (rejecting "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). Specifically, the Estate alleges:

- The JeffCo Defendants and Wellpath "maintained constitutionally deficient policies and practices and neglected to adequately train and supervise their employees with respect to the proper procedures for the evaluation and treatment of JCDF detainees' and inmates' serious medical needs." (ECF 1, ¶¶ 192, *and see* ¶¶ 196-201 (generalized allegations claiming Sheriff and Wellpath failed to train staff.)

- The JeffCo Defendants' contract with Wellpath "financially incentivizes reductions in the use of necessary off-site medical services for inmates, and as such, represents an unconstitutional policy which gives rise to entity liability" because the contract obligates Wellpath to "pay up to a certain amount . . . for off-site medical care for each inmate." (*Id.*, ¶¶ 193-94.)[5]

---

[5] In relying on the cost-allocation provision of the Sheriff's contract with Wellpath as a basis for its constitutional claims, the Estate overlooks that one purpose of contracts is to allow the bargaining parties to "enforce the expectancy interests created by the parties' promises so that they

The only factual allegations offered to support these conclusions are that five (5) individuals over an eight (8) year period between 2012 and 2020 had medical issues while incarcerated at the Jail and three (3) of those individuals died. (ECF 1, ¶¶ 204-08.) None of the incidents the Estate attempts to rely upon involved TVE, which was the cause of Ms. Angelo's death. (*Id.*, ¶¶ 175-76, 182.) Rather, the Estate uses a handful of dissimilar adverse medical events in the Jail as improper shorthand for plausibly pleading deliberate indifference instead of recognizing that these are rare occurrences indicative only of the fact that incarcerated individuals, like the rest of our community, may have health issues with significant and even fatal outcomes regardless of the medical care they receive. It is especially worth noting that of the incidents upon which the Estate seeks to rely, the circumstances of Mr. Abeyta's death were not litigated at all (*id.*, ¶ 204); Mr. Rogacki's case is currently subject to litigation based on disputed allegations about which no conclusions can be drawn (*id.*, ¶ 205); the litigation related to Mr. Kowalski's and Ms. Lobato's withdrawal deaths did not result in any finding of deliberate indifference and involved different medical issues (*id.*, ¶¶ 206-07); and Mr. McGill's non-fatal stroke occurred nine (9) years prior to Ms. Angelo's death and involved a different jail medical provider and a dissimilar medical issue (*id.*, ¶ 208). As a result, the Estate's reliance on these incidents is insufficient to demonstrate that the Sheriff was on notice of the need for more or better training or supervision in circumstances like those surrounding Ms. Angelo's death. *See Leonhard*, 2020 WL 1694377, *9 ("Plaintiffs' list of other lawsuits brought against various CCS entities is insufficient to allege that any CCS entity or Sheriff Shrader was on notice of the need for more or better training.").

---

can allocate risks and costs during their bargaining." *Town of Alma v. AZCO Const., Inc*., 10 P.3d 1256, 1262 (Colo. 2000) (*en banc*).

As in *Leonhard*, the Estate's failure to train and/or supervise theory fails for three reasons: (1) none of the cited cases are similar to these facts, as is required to put a party on notice that more or different training was needed; (2) allegations from complaints filed against [Wellpath] defendants, whether in the Jail or elsewhere, do not put the Sheriff on notice that the Jail's training is deficient regarding TVE infections; and (3) the only case that the Estate alleges resulted in a jury verdict is *McGill v. Corr. Healthcare Cos.*, No. 13-cv-1080-RBJ-BNB, 2014 WL 5423271 (D. Colo. Oct. 24, 2014), which involved a stroke, and those allegations do not plausibly establish that the Sheriff was on notice that Wellpath employees were likely to fail to adequately diagnose a TVE. *Leonhard*, 2020 WL at *9 (citations omitted).

Simply put, conclusory allegations that five individuals received insufficient medical care over a period of nearly a decade in factually distinguishable circumstances do not establish that the Sheriff, either directly or through her contractual relationship with Wellpath, established an official policy (either via an actual policy or custom or by failing to train or supervise) that caused Ms. Angelo's death and did so with "deliberate indifference to an almost inevitable constitutional injury." *Cacioppo*, 528 F. App'x at 931 (quoting *Schneider,* 717 F.3d at 769). Because the Estate's conclusory allegations do not plausibly establish its Fourteenth Amendment claims on any theory of *Monell* liability, the Court should dismiss them. *See Leonhard*, 2020 WL 1694377, at *9 (rejecting unconstitutional policy and failure to train claims against Sheriff based on prior lawsuits factually distinguishable from in-custody suicide death); *Sexton v. City of Colo. Springs*, 530 F. Supp. 3d 1044, 1070 (D. Colo. 2021) ("The Court finds that two alleged incidents . . . are insufficient to show a practice so permanent and well settled that it constitutes a custom or usage with the force of law."); *Est. of Reat v. Rodriguez*, No. 12-cv-02531-REB-MEH, 2013 WL

3010828, at *5 (D. Colo. June 17, 2013) (three instances over twenty years insufficient to allege pattern); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) ("[T]hree incidents" in four-year period "were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware."); *Abila v. Funk*, No. CV 14-1002 JB/SMV, 2016 WL 9021834, at *19 (D.N.M. Dec. 14, 2016) (citing cases supporting that "two or three instances will not suffice" to establish practice or custom).

Just as the Estate fails to plausibly establish an official Sheriff policy or custom related to Ms. Angelo's medical issues, it cannot establish the Sheriff caused Ms. Angelo's alleged injuries or was deliberately indifferent to an almost inevitable danger that she would suffer a fatal TVE. Because the Estate failed to demonstrate that Ms. Angelo's death went beyond medical malpractice to deliberate indifference by any Wellpath employee who assessed or treated her or to provide specific facts or sufficient factual enhancement to plausibly allege any widespread Sheriff policy or custom demonstrating deliberate indifference to Ms. Angelo's medical treatment, the Court should dismiss these claims against the Sheriff.

III.    **The Estate's non-delegable duty theory fails because it has not alleged that the Sheriff delegated final policy making authority to Wellpath, its allegations amount to a vicarious liability theory, and the non-delegable duty doctrine is not controlling or persuasive.**

The sum total of the Estate's nondelegable duty allegations are that the Sheriff "had a nondelegable duty to provide adequate medical care to inmates and detainees at JCDF" and is therefore "liable under the nondelegable duty doctrine for the deliberate indifference of Defendant Wellpath LLC and its employees or contractors. (ECF 1, ¶ 17, *and see id*., ¶ 16 (alleging Wellpath was the "contractual final delegated decision maker").) However, the Estate has not made any allegation that the Sheriff delegated final policymaking authority to Wellpath, which is the

defining element of liability based on a non-delegable duty theory. Further, the Estate seeks to impose liability on the Sheriff based only on allegations of a principal-agent relationship with Wellpath – that is, on an improper vicarious liability theory. Finally, neither the Supreme Court nor the Tenth Circuit has adopted the non-delegable duty theory.

**A.    Plaintiffs has not alleged that the Sheriff delegated final policymaking authority to Wellpath, a prerequisite for a non-delegable duty claim.**

The few trial court decisions within the District of Colorado that have entertained the non-delegable duty theory have recognized that the doctrine may be applicable if "the government delegates final policy making authority to the third party." *Estate of Walter v. Corr. Healthcare Cos.*, 323 F. Supp. 3d 1199, 1215-16 (D. Colo. 2018); *McGill*, 2014 WL 5423271; *Estate of Lovern v. Correct Care Solutions, LLC*, No. 18-cv-2573-KLM, 2019 WL 2903589 (D. Colo. July 3, 2019). Notably, neither the Tenth Circuit nor the Supreme Court has recognized the doctrine. *See* Section (III)(C), below.

The instant Complaint is entirely devoid of allegation that the Sheriff delegated final policy making authority to Wellpath. Specifically, while the Complaint makes conclusory allegations that the Sheriff's contract with Wellpath was the driving force in Ms. Angelo's constitutional injuries and that the Sheriff is liable for Wellpath's policies, it wholly fails to assert that the Sheriff allowed Wellpath to make final decisions regarding the **Sheriff's policies**. (ECF 1, ¶¶ 16-17.) The Estate has therefore failed to allege any facts that would allow for a Wellpath policy to be imputed to the Sheriff and the non-delegable duty theory cannot support a claim against the Sheriff.

**B.    Plaintiffs' non-delegable duty theory is impermissible vicarious liability.**

Under the doctrine of vicarious liability or *respondeat superior*, a principal is liable for the acts of its agent committed within the scope of its employment. *See Taylor v. Phelan*, 912 F.2d

429, 433 (10th Cir. 1990). Although some caselaw from this district has distinguished non-delegable duty liability from vicarious liability, *see, e.g., McGill,* 2014 WL 5423271, federal courts regularly equate a non-delegable duty theory based on a principal-agent relationship with a theory based on vicarious liability. *See, e.g., Yucsi v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 785 (3d Cir. 2020) (plaintiff can establish vicarious liability of an employer for the acts of an employee under state anti-discrimination law by demonstrating the employee violated a non-delegable duty of the employer); *Randle v. Crosby Tugs, L.L.C.*, 911 F.3d 280, 287 (5th Cir. 2018) (where shipowner owed nondelegable duty to provide adequate medical care to its seamen, it "would be vicariously liable if it had 'delegated performance of the duty' to an agent and the agent acted negligently in carrying out the duty") (emphasis added); *Civil Rights Ed. & Enforcement Ctr. v. Hospitality Props. Trust*, 867 F.3d 1093, 1105 (9th Cir. 2017) ("Nondelegable duty is a tort concept associated with vicarious liability theories. . . . [I]t means that an actor 'will be vicariously liable for the contractor's tortious conduct in the course of carrying out the activity.'"); *M.J. ex rel. Beebe v. U.S.*, 721 F.3d 1079, 1085 (9th Cir. 2013) ("We reject Plaintiffs' argument that the non-delegable duty doctrine is not a theory of vicarious liability."); *Ring v. Lexington Apartments & Motor Inns-Okla.*, 3 F. App'x 847, 850 (10th Cir. 2001) (because business invitors have a non-delegable duty to provide reasonably safe business premises, "[t]he business invitor 'may be held vicariously liable for an independent contractor's failure to exercise reasonable care even if the [invitor] has himself exercised due care'") (emphasis original, citation omitted); *U.S. v. Pelfrey*, No. CIV-18-945-HE, 2019 WL 2110582, at *3 (W.D. Okla. May 14, 2019) ("Courts have generally found that property owners have a non-delegable duty to not discriminate and that they will be held vicariously liable for discriminatory actions of their rental agents" in Fair Housing

Act context); *Clark v. U.S.*, No. CIV-08-462-FHS, 2009 WL 2843354, at *5 (E.D. Okla. Aug. 31, 2009) (rejecting applicability of the non-delegable duty theory to the United States under the Federal Tort Claims Act, explaining that "the non-delegable duty is the same as making the defendant strictly liable or vicariously liable"); *see also Meyer v. Holley*, 537 U.S. 280, 286, 289-91 (2003) (concluding that Fair Housing Act, which allows for traditional vicarious liability, would not permit liability premised on the more "extensive" and "nontraditional" vicarious liability theory of non-delegable duty). Colorado law also treats non-delegable duties as imposing vicarious liability. *See Reid v. Berkowitz*, 315 P.3d 185, 193 (Colo. App. 2013) ("[T]he concept of nondelegable duty is a species of vicarious liability").

The Supreme Court and the Tenth Circuit have expressly rejected vicarious liability as a basis for municipal liability under § 1983, including in cases involving the provision of medical care to inmates. *See Canton*, 489 U.S. at 385 ("*Respondeat superior* or vicarious liability will not attach under § 1983."); *Soto for Estate of Jimenez v. Bd. of Cty. Comm'rs of Caddo Cty.*, 748 F. App'x 790, 793 (10th Cir. 2018) ("'[U]nder § 1983, local governments are responsible only for their *own* illegal acts.' 'They are not vicariously liable under § 1983 for their employees' actions.'") (emphasis original, citations omitted); *Shue v. Laramie Cty. Detention Ctr.*, 594 F. App'x 941, 944 (10th Cir. 2014) ("In suits against municipal entities, '[s]ection 1983 . . . rejects the tort principle of *respondeat superior* and does not subject [such entities] to vicarious liability for the acts of their employees.'") (alterations original).

Further, courts across the country have likewise rejected efforts to hold a municipality vicariously liable for actions of its third-party medical provider. *See, e.g., Forte v. Conway*, No. 1:17-CV-1096-SCJ, 2017 WL 6551287, at *5 (N.D. Ga. Oct. 18, 2017) (distinguishing between

the policies of the medical provider and of the county, reasoning "[t]here is no indication that any policies of Gwinnett County or Sheriff Conway caused the implementation of [the third party provider's] policies," and concluding that the county "cannot be held liable on strictly 'respondeat superior principles'" in granting county motion to dismiss); *Davis v. Roane Cty., Tennessee*, No. 3:12-CV-634-TAV-CCS, 2016 WL 125497, at *8 (E.D. Tenn. Jan. 11, 2016) (rejecting claim against county stemming solely from jail medical contract, noting "that Roane County hired Southern Health to provide healthcare to its inmates and relied upon their judgments is not an unconstitutional policy"); *McPhail v. Cty. of Macomb*, No. 12-12134, 2014 WL 172275, at *6 (E.D. Mich. Jan. 15, 2014) ("[T]he fact that County entered into the Health Services Agreement with CMS to provide health care services to the MCJ inmates generally dictates a finding, as a matter of law, that the County was not deliberately indifferent to the medical needs of the MCJ inmates and is entitled to summary judgment on a claim of deliberate indifference to a medical need."); *Millmine v. Cty. of Lexington (S.C.)*, No. C/A 3:09-1644-CMC, 2011 WL 182875, at *5 (D.S.C. Jan. 20, 2011) (expressly rejecting plaintiff's argument for county liability under non-delegable duty theory where county contracted with third party to provide medical care to inmates, concluding, "This argument is an effort to hold [the] County accountable under a respondeat superior theory, which is not a viable theory of liability under § 1983"); *Fisher v. Cty. of Macomb*, No. 2:08-cv-13844, 2011 WL 2414413, at *9 (E.D. Mich. June 14, 2011) (same); *but see Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217 (D. Colo. 2016).

Here, the Estate claims that the Sheriff is liable under the non-delegable duty doctrine "for the deliberate indifference of [Wellpath] and its employees or contractors," Wellpath's "deliberatively indifference policies, customs, and practices," and "for the selection of Wellpath

to provide medical services." (ECF 1, ¶¶ 17, 231, 251.) *Monell's* proscription on vicarious liability prohibits the Estate's attempt to impute liability on the Sheriff by alleging nothing more than a principal-agent relationship created by her contract with Wellpath (*id*., ¶¶ 190-203), and this Court should likewise reject it.

Even the rare district court cases that have entertained the non-delegable duty theory have required that the medical provider itself has some policy that violates constitutional principles – a single incident is insufficient, as are the provisions of a contract between a sheriff and a jail healthcare contractor. *Lovern,* 2019 WL 2903589, at *5. Nor, as discussed above, are the allegations related to other medical issues in the Jail sufficient to show that the Sheriff was or should have been on notice that Ms. Angelo's TVE would not be identified and addressed.

**C.    The non-delegable duty theory is not controlling or persuasive.**

Although several Colorado district court cases have allowed non-delegable duty theory claims to proceed, neither the Supreme Court nor the Tenth Circuit have adopted a "non-delegable duty" theory of liability under § 1983 as advocated by Plaintiffs. To the contrary, in *Estelle v. Gamble,* the Supreme Court remanded a § 1983 action, suggesting it would not adopt a theory allowing the policies and practices of the medical provider to be imputed to prison officials. 429 U.S. 97, 104 (1976). The Tenth Circuit has likewise not adopted the non-delegable duty theory; existing caselaw suggests it would not do so. *See Strain v. Regalado*, 977 F.3d 984, 997 (10th Cir. 2020) (rejecting municipal liability absent underlying constitutional violation by  municipal actor); *Carr v. El Paso Cty.*, 757 F. App'x 651 (10th Cir. 2018) (rejecting inmate's § 1983 medical care claim despite concluding that plaintiff had alleged an Eighth Amendment violation by contract

medical staff, noting that county was only liable for its own officially sanctioned or ordered acts).

As a result, the Court should dismiss the claims against the Sheriff founded on this theory.

IV.     **Ms. Angelo's status as a convicted inmate bars Plaintiffs' state claims against the JeffCo Defendants.**

The Court must also dismiss Plaintiffs' state law claims against the JeffCo Defendants. Because Ms. Angelo was a convicted inmate on the charge for which she was held at the time of her death, the CGIA bars her claims against the JeffCo Defendants.[6] *See* COLO. REV. STAT. § 24-10-106(1.5)(a) (no waiver of sovereign immunity for claims brought by "claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction").

On March 4, 2019, Ms. Angelo entered a guilty plea to one count of possession of a schedule 3/4/5 controlled substance pursuant to COLO. REV. STAT. §§ 18-18-403.5(1) & -(2)(c), and was sentenced to probation. Ms. Angelo's June 19, 2021 arrest and subsequent incarceration was based on a probation revocation complaint and associated warrant.[7] While the probation revocation proceedings were pending at the time of Ms. Angelo's death, such proceedings ask not whether the individual is guilty of a criminal charge but whether the individual should be

---

[6] Although immaterial to the ultimate analysis, the Estate's constitutional claims properly sound under the Eighth Amendment for this reason.

[7] The JeffCo Defendants ask the Court to take judicial notice of Ms. Angelo's criminal proceedings in Jefferson County Case 2018CR1507, including her March 4, 2019 conviction and sentencing and December 20, 2019 re-sentencing, pursuant to F.R.E. 201. The JeffCo Defendants provide the Colorado State Courts Data Access information about that case here as **Exhibit A**. A court "may take judicial notice of its own records as well of those of other courts." *Hutchinson v. Hahn*, 402 F. App'x 391, 394-95 (10th Cir. 2010) (citing *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.* 605 F.2d 1169, 1172 (10th Cir. 1979) (federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue")). The taking of judicial notice is mandatory "if requested by a party and supplied with the necessary information." F.R.E. 201(d).

*resentenced* to probation or to incarceration. *See Byrd v. People*, 58 P.3d 50, 55 (Colo. 2002) (*en banc*) ("The purpose of a probation revocation hearing is to consider the conduct of the defendant *after an adjudication of guilt*," "[p]arties in probation revocation proceedings present the probationer's activities to the court consistent with relaxed rules of evidence. The court determines whether a violation occurred and then exercises its discretion and expeditiously determines whether continuing probation is effective in rehabilitating the probationer or whether the probationer should be resentenced to confinement") (emphasis added, citations omitted); *and see Heidel v. Rio Blanco Cty. Sheriff's Office*, -- P.3d --, 2023WL3514116, * (Colo. App. 2023) (reading COLO. REV. STAT. § 24-10-106(1)(b), -106(1.5)(a), and -106(1.5)(b) together, "the provisions make clear that 'the operative event revoking the waiver of immunity is *a[n] adjudication of guilt*'") (alteration original, emphasis added, quoting *Grady v. Jefferson Cty.*, Civ. Act. No. 07-cv-01191-WDN-CBS, 2008 WL 178923, *5 (D. Colo. Jan. 17, 2008)).[8]

As discussed in Section I, the Board is not the proper party for these claims. And, because Ms. Angelo's incarceration was pursuant to her conviction, which formed the basis for her probation sentence and imbued the court with jurisdiction over her for the revocation proceedings, the CGIA bars Plaintiffs' state law claims against both the Sheriff and the Board regardless.

**V.      Even if the CGIA does not bar Plaintiffs' state law claims, they are untimely as against the Sheriff.**

Even if the Court finds that Ms. Angelo was not a convicted inmate for purposes of the CGIA's immunity provisions, COLO. REV. STAT. § 13-80-103(1)(c) nevertheless bars Plaintiffs'

---

[8] While the *Heidel* Court examines whether the outcome would be different if the individual was held on a probation revocation, like Ms. Angelo, its conclusions on that front are non-binding dicta that need not be accepted by this Court, especially in light of the *en banc Byrd* decision.

state law claims against the Sheriff. That provision provides a one-year statute of limitations "regardless of the theory upon which suit is brought, or against whom suit is brought, [for a]ll actions against sheriffs . . ." *Id., and see Estate of Burgaz v. Shrader*, 2021CA1648 (Dec. 15, 2022) (finding state law claims against county sheriff for survival and negligent operation of a jail subject to – and barred by – one-year statute of limitations codified at COLO. REV. STAT. § 13-80-103(1)(c)).[9]

Ms. Angelo died on June 28, 2021. (ECF 1, ¶¶ 149, 173). Plaintiffs filed their Complaint on June 23, 2023, nearly a year after the applicable statute of limitations for state law claims against the Sheriff expired. As a result, the Court must dismiss Plaintiffs' state law claims against the Sheriff as untimely.

## CONCLUSION

For the reasons set forth herein, the JeffCo Defendants respectfully request that the Court grant this motion and dismiss Plaintiffs' claim against them. Additionally, the JeffCo Defendants respectfully request that the Court award them their reasonable attorney fees for any state law claims it dismisses, pursuant to COLO. REV. STAT. § 13-17-201(1) ("In all actions brought as a result of the death or an injury to person or property occasioned by the tort of any other persons, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action."), and that such award be entered jointly and severally against Plaintiffs and their counsel.

---

[9] Indeed, the Colorado Court of Appeals found this ruling so unremarkable that it declined to publish the resulting opinion, which the JeffCo Defendants provide here as **Exhibit B**.

Respectfully submitted September 6, 2023.

JEFFERSON COUNTY ATTORNEY'S OFFICE

By: _/s/ Rebecca P. Klymkowsky_____
Rebecca Klymkowsky, #41673
Assistant Deputy County Attorney
Levi Stubbs, #50262
Assistant County Attorney
100 Jefferson County Parkway, Suite 5500
Golden, Colorado 80419
T: 303.271.8932
F: 303.271.8901
E: rklymkow@jeffco.us
E: lstubbs@jeffco.us
*Attorneys for the County Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2023, I filed the foregoing JEFFERSON COUNTY DEFENDANTS' MOTION TO DISMISS via CM/ECF, which will serve a true and correct copy upon the following:

Felipe Bohnet-Gomez | fbg@rmlawyers.com
Virginia Hill Butler | vb@rmlawyers.com
Matthew Cron | mc@rmlawyers.com
Siddhartha H. Rathod | sr@rmlawyers.com
RATHOD MOHAMEDBHAI, LLC
*Attorneys for Plaintiffs*

Daniel P. Struck | dstruck@strucklove.com
Ashlee B. Hesman | ahesman@strucklove.com
Kristina R. Rood | krood@strucklove.com
STRUCK LOVE BAJANSKI & ACEDO, PLC
*Attorneys for Wellpath LLC Defendants*

*/s/ Heather A. Hayward*
Heather A. Hayward, Paralegal