**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-01607-CNS-STV

THE ESTATE OF ABBY ANGELO; *et al,*

　　　Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY, COLORADO; *et al*,

　　　Defendants.

_____

**ORDER**
_____

Chief Magistrate Judge Scott T. Varholak

This matter is before the Court on Plaintiff's Motion to Substitute Service of a Subpoena on Nicole (Niki) Tronzo (the "Motion") [#247], which was referred to this Court. [#248] Through the Motion, Plaintiff requests that the Court permit substituted service for Nicole (Niki) Tronzo pursuant to Federal Rule of Civil Procedure 45(b)(1). [#247] For the following reasons, the Motion **DENIED.**

## I.  BACKGROUND

The underlying dispute involves the death of Abby Angelo who died from a treatable heart infection at the Jefferson County Detention Facility (JCDF). [#247 at 1] This lawsuit was filed asserting that facility employees failed to provide Ms. Angelo with appropriate medical care and treatment which resulted in her death. [*Id*. at 1-2]

Nicole Tronzo, a licensed professional counselor (LPN) who worked at the JCDF while Abby Angelo was detained there, is believed to have critical information regarding

Ms. Angelo's condition and the care (or lack thereof) that Ms. Angelo received up to her death.  [*Id*. at 2]  Plaintiffs claim Ms. Tronzo interacted with Ms. Angelo in the days leading up to Ms. Angelo's death and has direct knowledge central to Plaintiffs' claims, including: Ms. Angelo's condition on the morning of June 28th; what, if anything, Ms. Tronzo communicated to other staff regarding Ms. Angelo's deteriorating physical state; whether any medical staff followed up with Ms. Angelo after Ms. Tronzo's assessment; and why she and others did not send Ms. Angelo to the hospital for an emergent assessment.  [*Id*.]

Plaintiffs made extensive, multi-step efforts to serve Ms. Tronzo but were unsuccessful.  [*Id*. at 2-3]  They first identified her employment and contact details through public sources, including her licensing profile and employer website.  [*Id*. at 2] Using that information, they began outreach in February 2026 via her work email.  [*Id*. at 3]  Ms. Tronzo confirmed on March 12, 2026 that the email address was valid and accessible, but she did not respond to subsequent emails or a later phone call and voicemail.  [*Id*.]  Plaintiffs then attempted in-person service at multiple locations.  [*Id*.] On March 26, 2026, a process server went to her employer's office, but staff indicated she works at the jail and refused to provide that address.  [*Id*.]  On April 25, 2026, a process server tried to serve her at the Jefferson County Sheriff's Office and detention facility, but staff stated they were not authorized to accept service, and security denied access to the premises.  [*Id*.]

Being unable to serve Ms. Tronzo in person, Plaintiffs now seeks authorization to serve her via certified mail to her verified physical work address and electronic mail to her verified work email address.  [*Id*. at 8]

## II.  ANALYSIS

Federal Rule of Civil Procedure 45(b)(1) governs the service of a subpoena and provides that "[s]erving a subpoena requires delivering a copy to the named person ..." "The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required," although "[i]n recent years a growing number of cases have departed from the view that personal service is required and alternatively have found service of a subpoena under Rule 45 proper absent personal service."  9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 2454 (3d ed. updated Apr. 2021).  This Court recognizes that there is a split of authority among courts which have ruled on this issue, and that the Tenth Circuit has not yet addressed this question.  In fact, both interpretations of Rule 45(b)(1) can be found from courts within this district. *Compare Williams v. Lowe's Companies, Inc.*, No. 17-cv-02564-MEH, 2019 WL 13473875, at *1 (D. Colo. Nov. 7, 2019) ("Under Rule 45(b), then, personal service is expressly required; the rule makes no allowance for service by alternate means."); *with Collins v. Trans Union, LLC*, No. 14-cv-00742-RBJ-NYW, 2015 WL 1932044, at *4 (D. Colo. Apr. 28, 2015) (finding certified mail constitutes acceptable service of a subpoena); *and E.A. Renfroe & Co. v. Moran*, No. 08-cv-00732-RPM-KMT, 2008 WL 1815535, at *5 (D. Colo. Apr. 18, 2008) ("[E]ffective service under Rule 45 is not limited to hand-to-hand personal service in every case[;]" . . . "what is mandated is that service be made in a manner which reasonably insures actual receipt of the subpoena. . . . The Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposely attempting to evade service").

3

"The rationale for this [latter] minority view is that the language of Rule 45(b)(1) is ambiguous and should be considered in context of Rule 45 as well as other federal rules." *Bank of Oklahoma, N.A. v. Arnold*, No. 06-cv-543-GKF-PJC, 2008 WL 482860, at *3 (N.D. Okla. Feb. 20, 2008)  "Reading Rule 45(b)(1) as allowing only personal service of the subpoena would render the statement regarding the 'manner of service' [in Rule 45(b)(4)] superfluous." *Id*.  (citing *Western Resources, Inc. v. Union Pacific Railroad Co.*, 2002 WL 1822432 at *2 (D.Kan. July 23, 2002).  "Further, if such were the reading, the language of Rule 4(e)(2)(A) requiring that 'delivering' a copy of the summons and complaint be done 'personally' would be pure surplusage." *Id*.  "[T]hese courts reason, reading 'delivering' in light of these federal rules militates against restricting that delivery to personal service." *Id*.  Nonetheless, for substitute service to be valid, it must comport with due process by being calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Whether a non-party served with a subpoena other than by personal service has been afforded due process depends upon the particular facts. *In re Shur*, 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995).

Given the facts of this case, the Court need not take a position on whether Rule 45 inherently allows substitute service of a subpoena or not.  In those cases where Colorado courts have deemed substitute service of a subpoena permissible under the rule, the determination has been driven by the specific facts of each case.  *See Williams*, 2019 WL 13473875 at *1 (finding substitute service permissible despite stating that personal service is expressly required under Rule 45 because: 1) the court found

that the defendants employed due diligence in attempting to effect personal service, and 2) allowing substitute service "facilitate[d] the just, speedy, and inexpensive resolution of th[e] matter, which [was] scheduled for trial [just five months later]"; *Collins*, 2015 WL 1932044 at *4 (finding certified mail constituted acceptable service of a subpoena that notified defendants of plaintiff's intention to serve subpoenas to produce documents, not to appear for a deposition); *E.A. Renfroe & Co.*, 2008 WL 1815535 at *5 (finding that service of a subpoena by mail satisfied the delivery requirement of Rule 45 because the service "accomplished the goal of actual receipt of the subpoena by the witness").  As these cases demonstrate, even if this Court were to determine that substitute service is permitted under Rule 45, other threshold requirements must be met before granting a motion for such service.

Here, Plaintiffs request that this Court allow substituted service of a subpoena on Ms. Tronzo by certified mail to her verified address and electronic mail to her verified work email address.  [#247 at 8]  Plaintiffs claim that this should be permissible because: 1) they have diligently attempted to personally serve Ms. Tronzo to no avail, [*id.* at 6]; 2) given the outcome of these attempts, further attempts at personal service of Ms. Tronzo are unlikely to be successful because her place of employment—a jail—is inaccessible to the public [*id.*]; 3) Ms. Tronzo received Plaintiffs' communications via email previously and thus Plaintiffs claim she has access to her email and phone [*id.*]; and 4) substituted service of the subpoena via both her verified physical and email work addresses is reasonably calculated to provide Ms. Tronzo of actual notice of her deposition subpoena, as the rule requires.  [*Id.*]  The Court addresses each argument in turn.

### A.    Due Diligence

Plaintiffs claim that the Court should allow substitute service in this case because it has diligently attempted to personally serve Ms. Tronzo without success. [*Id*. at 2] According to the Motion, Plaintiffs identified Ms. Tronzo's employment through her licensing profile with the Colorado Department of Regulatory Agencies, which lists Correctional Psychology Associates ("CPA")—a mental health provider contracting with JCDF—as her employer. [*Id*. at 2-3] CPA's website also publicly lists Ms. Tronzo's work email address and confirms her role as Mental Health Director for the Jefferson County Sheriff's Office. [*Id*. at 3] Beginning in February 2026, Plaintiffs attempted to contact Ms. Tronzo via that email address and received a single response on March 12, 2026, confirming the address was accurate and accessible. [*Id*.] However, she did not respond to follow-up emails sent on March 12 and March 19, 2026, nor did she return a phone call or voicemail left on April 28, 2026. [*Id*.] Plaintiffs then attempted in-person service. [*Id*.] On March 26, 2026, a process server went to CPA's office at 420 E. 58th Ave., Suite 210, Denver, Colorado, where a receptionist stated that Ms. Tronzo works at the jail rather than at that office and declined to provide the jail's address. [*Id*.] Finally, on April 25, 2026, a process server attempted service at the Jefferson County Sheriff's Office and JCDF, located at 200 Jefferson County Parkway, Golden, Colorado, but was informed that staff were not authorized to accept service on her behalf, and security personnel denied access to the premises. [*Id*.]

Although Plaintiffs emphasize that they attempted service at two different locations, their efforts fall short of what courts typically consider due diligence because they made only a single attempt at each address. In the context of F.C.R.P. 4, which

6

governs service of process for summons, courts generally find that the due diligence requirement is satisfied when a party has made multiple attempts at service at multiple addresses. *See, e.g., Malone v. Highway Star Logistics, Inc.*, No. 08-cv-01534-RPM-KLM, 2009 WL 2139857, at *2 (D. Colo. July 13, 2009) (due diligence satisfied where personal service was attempted at five different addresses); *BMO Harris Bank N.A. v. Marjanovic*, No. 19-cv-02945-CMA-KMT, 2020 WL 4705294, at *1 (D. Colo. Aug. 13, 2020) (plaintiff employed due diligence by attempting service at four different addresses). Here, Plaintiffs' two total attempts—one at CPA and one at the Jefferson County facility—do not reflect the persistence ordinarily required. Plaintiffs have not shown any meaningful efforts to coordinate with the Jefferson County facility to facilitate service on Ms. Tronzo, such as contacting facility administration, legal counsel, or human resources personnel to arrange an appropriate time or manner for personal service within the constraints of the secure facility. Nor have Plaintiffs demonstrated any attempt to identify or serve Ms. Tronzo at a residential address, despite the availability of other investigative methods commonly used to locate individuals for service of process. Plaintiffs likewise do not indicate that they attempted service at different times of day or on different dates, sought to determine Ms. Tronzo's work schedule, utilized additional skip-tracing or public-record searches, or otherwise pursued alternative avenues reasonably calculated to accomplish personal service. The record therefore reflects only minimal efforts, rather than the sustained and varied attempts typically required to establish due diligence.

Because Petitioner has failed to show more extensive due diligence in locating and serving Ms. Tronzo the Court cannot find that substitute service in this matter is appropriate.

### B.    Further Service Attempts on Ms. Tronzo

Plaintiffs claim that given the previous two attempts at service and in particular Ms. Tronzo's employment at a secure facility, further attempts to serve her are unlikely to be successful.  [#247 at 6]  This argument is unpersuasive.  Here, as discussed above, Plaintiffs have not demonstrated that they employed due diligence to be certain that further attempts to serve Ms. Tronzo will be unsuccessful.  Plaintiffs made only a single attempt at each location and did not indicate any effort to vary the timing of service, coordinate with the facility to facilitate access, or pursue alternative avenues for in-person service.  The mere fact that Ms. Tronzo works in a secure facility does not render personal service impossible—particularly where Plaintiffs have not shown that additional, more diligent efforts would be unsuccessful.  Indeed, accepting Plaintiffs' position would effectively allow any individual working in a restricted-access workplace to be served by alternative means after minimal effort, a result inconsistent with the diligence required under Rule 45.  Thus, the Court cannot conclude that further attempts to serve Ms. Tronzo will be unsuccessful.

Because Plaintiff has failed to demonstrate sufficient diligence in attempting personal service, the Court need not determine whether Rule 45 permits substitute service by email or certified mail under the circumstances presented here.  Even assuming such methods may be permissible in some cases, Plaintiff has not established the prerequisite showing necessary to justify a departure from traditional

personal service requirements.    Petitioner's Motion [#247] is therefore **DENIED**

**WITHOUT PREJUDICE** to filing a motion for substitute service that corrects the

deficiencies identified herein.


DATED:  May 7, 2026                                    BY THE COURT:

                                                       s/Scott T. Varholak
                                                       Chief United States Magistrate Judge